Peggy WILLETT *v.* STATE of Arkansas

CA CR 85-221                                712 S.W.2d 925

Court of Appeals of Arkansas
Division I
Opinion delivered June 25, 1986

*Pruitt & Hodnett*, by: *Jerry D. Pruitt*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Judge. This appeal comes from the Baxter County Circuit Court. Appellant, Peggy Willett, appeals her conviction wherein she was found guilty of possession of cocaine and marijuana, fined $5,000, and sentenced to three years in the penitentiary, and six months in the county jail respectively. We affirm.

Appellant raises the following five points for reversal: (1) The court erred in refusing to grant appellant's motion to suppress on the basis that no probable cause existed to authorize the police to seize the package from the United Parcel Service office in Harrison; (2) the court erred in refusing to grant appellant's motion to suppress on the basis that police officers did not possess both probable cause and exigent circumstances to allow a seizure of the package without a warrant; (3) the court erred in failing to grant appellant's motion to suppress on the ground that the United Parcel Service driver was an agent of the state and, therefore, his first search violated appellant's fourth amendment rights; (4) the court erred in sustaining the state's objection to the question concerning the United Parcel Service guidelines in relation to opening the package that did not contain a last name; and (5) the court erred in refusing to give AMCI 204.

On June 8, 1984, Ron Walden, a delivery man for United Parcel Service, a private freight carrier hereinafter referred to as "UPS," received a package addressed to "Peg, Route 1, Box 101, Gassville, Arkansas." The package was marked "pictures." Appellant, Peggy Willett, lived at Route 1, Box 101, Gassville, Arkansas. Appellant's name, Peggy Willett, was printed on the mailbox outside her house. Walden testified that he did not see the name on the box and he passed the house by. Walden stated that he decided to open the package in an attempt to find an invoice which would give a last name for the addressee. Upon opening the

package, Walden found five $100 bills and some white powder which had been placed in plastic bags and then wrapped in aluminum foil. Walden stated that he was suspicious of the white powder so he replaced the contents of the package and returned the package to the UPS office. He reported his discovery to the general manager of the UPS office, Ed Cross.

The following morning Cross contacted the Arkansas State Police and told them that he believed UPS was holding a package containing cocaine. Cross also opened the package and examined the contents.

Arkansas State Police Narcotics Investigator Bill Beach ordered Arkansas State Police Officer Robert Hicks, who was stationed at Harrison, to go over and pick up the package at the UPS office and take it to the Mountain Home Sheriff's Office. Hicks picked up the package without a search warrant.

In the Mountain Home Sheriff's Office, Investigator Beach opened the package to verify its contents and removed a small portion of the white powder which he field-tested. The test indicated that the powder was cocaine. Investigator Beach then made arrangements for Hicks to pose as a UPS delivery man and obtained a search warrant for the address listed on the package, appellant's home. Hicks made the delivery, posing as a UPS employee. After the delivery, Investigator Beach and other police officers searched appellant's house and found cocaine and marijuana.

Appellant was arrested and charged with possession of cocaine with intent to deliver and possession of marijuana. Appellant filed a motion to suppress. A hearing on the motion was conducted on December 13, 1984, wherein the motion was denied. The matter was set for trial. The trial was conducted on April 11, 1985, and the jury found appellant guilty of possession of cocaine and possession of marijuana.

Appellant, in her first point for reversal, cites *United States v. Jacobsen*, 466 U.S. 109 (1984). Appellant argues that her motion to suppress should have been granted because the police did not have probable cause authorizing them to seize the package from the UPS office in Harrison. The facts in *Jacobsen* are very similar to those in the case at bar. In *Jacobsen*, during the

examination of a damaged package, employees of Federal Express, a private freight carrier, observed a white powdery substance. The Federal Express employees notified the Drug Enforcement Administration (DEA) and replaced the contents of the package. A DEA agent arrived, examined the contents of the package, conducted a field test of the powder, and determined that it was cocaine. A warrant was obtained to search the address on the package. The search led to arrests of the correspondents.

The U.S. Supreme Court held in *Jacobsen* that the fourth amendment did not require that the DEA agent obtain a warrant before testing the white powder. The Court held as follows:

> The first Clause of the Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." . . . This Court has also consistently construed this protection as proscribing only governmental action; it is wholly inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." [citation and footnote omitted]

> When the wrapped parcel involved in this case was delivered to the private freight carrier, it was unquestionably an "effect" within the meaning of the Fourth Amendment. Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable. [footnote omitted] . . . [I]n this case the fact that agents of the private carrier independently opened the package and made an examination that might have been impermissible for a government agent cannot render otherwise reasonable official conduct unreasonable. The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred.

> The initial invasions of respondents' package were occasioned by private action. Those invasions revealed that the package contained only one significant item, a suspi-

cious looking tape tube. Cutting the end of the tube and extracting its contents revealed a suspicious looking plastic bag of white powder. Whether those invasions were accidental or deliberate, [footnote omitted] and whether they were reasonable or unreasonable, they did not violate the Fourth Amendment because of their private character.

The additional invasions of respondents' privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search. . . .

. . . .

*. . . Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents. The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment.* See *Coolidge* v. *New Hampshire*, 403 U.S. 443, 487-490, (1971); *Burdeau* v. *McDowell*, 256 U.S. 465, 475-476, (1921). [emphasis supplied]

Similarly, the removal of the plastic bags from the tube and the agent's visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search. [footnote omitted] It infringed no legitimate expectation of privacy and hence was not a "search" within the meaning of the Fourth Amendment.

While the agents' assertion of dominion and control over the package and its contents did constitute a "seizure," [footnote omitted] that seizure was not unreasonable. The fact that, prior to the field test, respondents' privacy interest in the contents of the package had been largely compromised, is highly relevant to the reasonableness of the agents' conduct in this respect. The agents had already learned a great deal about the contents of the package from the Federal Express employees, all of which was consistent with what they could see. The package

itself, which had previously been opened, remained unsealed, and the Federal Express employees had invited the agents to examine its contents. Under these circumstances, the package could no longer support any expectation of privacy; it was just like a balloon "the distinctive character [of which] spoke volumes as to its contents, particularly to the trained eye of the officer," *Texas* v. *Brown*, 460 U.S. 730, 743 (1983) (plurality opinion); see also *id.*, at 746 (POWELL, J., concurring in the judgment); or the hypothetical gun case in *Arkansas* v. *Sanders*, 442 U.S. 753, 764-765, n. 13, (1979). Such containers may be seized, at least temporarily, without a warrant. [footnote omitted] *Accordingly, since it was apparent that the tube and plastic bags contained contraband and little else, this warrantless seizure was reasonable, [footnote omitted] for it is well-settled that it is constitutionally reasonable for law enforcement officials to seize "effects" that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband.* [footnote omitted] [emphasis supplied]

. . . .

A chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy . . . .

. . . .

. . . This warrantless "seizure" was reasonable. [footnote omitted]

In sum, the federal agents did not infringe any constitutionally protected privacy interest that had not already been frustrated as the result of private conduct. To the extent that a protected possessory interest was infringed, the infringement was *de minimis* and constitutionally reasonable.

*Id.* at 113-126.

The facts in the case at bar appear to be substantially indistinguishable from those in *Jacobsen*. The police had been informed by the UPS employees that there was a suspicious white

powder in the package. The United States Supreme Court, in *Texas* v. *Brown*, 460 U.S. 730 (1983), held that probable cause is a "flexible, common-sense standard." *Id.* at 742. The Court stated that probable cause requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; however, the Court noted, it does not demand any showing that such a belief be correct or more likely true than false. It seems clear in this case that the information available to the police warranted them in the belief that the package contained contraband. Therefore, we find no merit in appellant's first point for reversal.

As her second point for reversal, appellant argues that the trial court erred in refusing to grant her motion to suppress on the basis that the police officers did not possess both probable cause and exigent circumstances to permit a warrantless seizure. As stated above, we find that the police did have probable cause to believe that the package contained contraband.

Appellee asserts that appellant should not be permitted to argue lack of exigent circumstances on this appeal because she did not make that argument at the trial. It appears from the record that the trial court made no findings and reached no conclusions on whether exigent circumstances existed. Appellee cites *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984), which held that an objection, to be effective, must apprise the trial court of the specific ground upon which it is based. Appellant, in her brief in support of the motion to suppress, alleged that the search was in violation of the fourth amendment of the Arkansas Constitution and the United States Constitution and A.R.Cr.P. Rules 13.1, 13.2, and 13.3, but did not specifically argue that exigent circumstances did not exist. This court does not reach arguments not made below. *Wells* v. *State*, 285 Ark. 9, 684 S.W.2d 248 (1985).

In any case, we believe that exigent circumstances are not required before a law enforcement officer is authorized to seize a package that cannot support a justifiable expectation of privacy, without a warrant, based on probable cause to believe the package contains contraband. The Court in *Jacobsen* did not require exigent circumstances. The cases cited by appellant for

the proposition that there must be exigent circumstances, in addition to probable cause, for the police to seize the package in the case at bar can be distinguished from the facts in this case. Appellant cites *Arkansas* v. *Sanders*, 442 U.S. 753 (1979), which held that there must be exigent circumstances for police to make a warrantless search of luggage taken from an automobile properly stopped and searched for contraband. In *Tillman* v. *State*, 275 Ark. 275, 630 S.W.2d 5 (1982), the Arkansas Supreme Court, citing A.R.Cr.P. Rule 14.1(a), required both reasonable cause and exigent circumstances before the police may make a warrantless search of a vehicle in a public way. Appellant also notes *Haynes* v. *State*, 269 Ark. 506, 602 S.W.2d 599, *cert. denied*, 449 U.S. 1066 (1980), which cited A.R.Cr.P. Rule 14.3 requiring exigent circumstances for an emergency search of premises or a vehicle without a warrant. In *Haynes*, the court required exigent circumstances before a warrantless entry into one's home. Appellant cites *United States* v. *Licata*, 761 F.2d 537 (9th Cir. 1985), which held that the warrantless seizure of a package checked with an airline was supported by probable cause and exigent circumstances. The facts in *Licata* can be distinguished from those in the case at bar. The seized container in *Licata* was closed. The Ninth Circuit Court of Appeals specifically recognized, "The fourth amendment provides protection to the owner of every container that conceals its contents from plain view." *Id.* at 541. (citations omitted) The container in the case at bar had already been opened by the UPS employees and, therefore, its contents were not concealed from plain view after the UPS employee notified the police of the contents. The cases cited by appellant, with the exception of *Licata*, apply to homes and cars. A different rule exists in the case of packages opened by private action where the police have been invited to view the contents. This argument is also in accordance with the Supreme Court's position in *Jacobsen*.

    Appellant argues, as her third point for reversal, that the court erred in denying her motion to suppress on the ground that the UPS driver was an agent of the state and, therefore, the search by the UPS driver violated appellant's fourth amendment rights. Ron Walden, the UPS driver, testified that he was employed by UPS, that he had never worked with the police, and that he did not act in cooperation with the police when he

searched the package. We must defer to the superior position of the trial judge to pass upon the credibility of witnesses in a suppression hearing. *State* v. *Osborn*, 263 Ark. 554, 566 S.W.2d 139 (1978). Therefore, we find no merit in appellant's third point for reversal.

As her fourth point, appellant argues that the trial court erred in sustaining the state's objection to the question concerning UPS's guidelines in relation to opening the package that did not contain a last name. The record reveals that the objection was made on the grounds that the guidelines were not relevant to the issue before the court. The court sustained that objection. A ruling on the relevancy of the evidence is discretionary with the trial court and its decision will not be reversed absent an abuse of discretion. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984). Appellee argues that appellant failed to make a proffer to the trial court of the expected testimony which was excluded by the trial court's ruling. It is impossible for this court to find an abuse of discretion by the trial court when we don't know what testimony was expected and excluded. The failure to proffer evidence so this court can determine if prejudice results from its exclusion precludes review of the evidence on appeals. *Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985). Ark. Unif. R. Evid. Rule 103(2) states as follows:

> Rulings on evidence. — (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

> (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Ark. Stat. Ann. § 28-1001 (Repl. 1979). Counsel for appellant indicated at trial that this line of questioning, the UPS guidelines, was relevant to the issue of whether Walden was acting in cooperation with the police when he opened the package. We cannot find that it was an abuse of discretion to exclude that testimony as irrelevant.

As her fifth and final point for reversal, appellant argues that

the trial court erred in refusing to give the following jury instruction:

## AMCI 204
## DEFENDANT'S CHARACTER

If you find that the defendant is a person of good character you may take that fact into consideration in determining his guilt or innocence, but if you believe from all the evidence in the case beyond a reasonable doubt that the defendant is guilty you should so find, notwithstanding his good character.

(Supp. 1982). Appellant's counsel submitted the entire *Arkansas Model Jury Instruction: Criminal* book to the court and asked the court to read AMCI 204 to the jury. The court refused to read the instruction because it was not submitted in typewritten form in accordance with local court rules.

In order to preserve for appeal an objection to the trial court's failure to give an instruction, the appellant must make a proffer of the instruction to the judge in accordance with the procedural rules of that court. Although appellant's attorney did request a standard AMCI instruction it was not typewritten in accordance with the court's procedural rules. This procedure expedites trial and facilitates compliance with the Arkansas Constitution, Art. 7, § 23, and A.R.Cr.P. Rule 33.3, which make it mandatory that the trial judge, when requested by a party or juror, deliver to the jury a typewritten copy of the oral instructions given to the jury. *Henry* v. *State*, 18 Ark. App. 115, 710 S.W.2d 849 (1986).

For the reasons stated above we affirm the decision of the trial court.

Affirmed.

COOPER and MAYFIELD, JJ., agree.