Casimiro GARZA *v*. STATE of Arkansas

CR 87-52                                    735 S.W.2d 702

Supreme Court of Arkansas
Opinion delivered September 14, 1987

*Gregory E. Bryant*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. A verdict of guilty of first degree murder, Ark. Stat. Ann. § 41-1502(b) (Repl. 1977), was delivered by a jury in Pulaski County, Arkansas, and the appellant was sentenced to forty years in the Department of Correction. He makes two arguments on appeal. First, the state did not produce sufficient evidence from which the jury could have found that the appellant acted with the premeditated and deliberated purpose of causing his wife's death. The second argument is that the court erred in refusing to grant a mistrial due to alleged prosecutorial misconduct during the closing argument. We are not convinced that either argument establishes that prejudicial error occurred and therefore affirm the conviction.

On August 20, 1985, a Little Rock police officer was on duty at the Baptist Medical Center emergency room. He observed a vehicle drive into the emergency room area. The man driving the car, subsequently identified as Garza, exited and attempted to inform those present that his injured wife was in the parked vehicle. The man had injuries about his face and was apparently attempting to obtain medical attention for himself, his wife, or both of them. Shortly thereafter, the officer discovered the appellant's dying wife in the back seat of the vehicle. It was determined that she had been shot three times. She was pronounced dead at the emergency room.

We first consider the appellant's argument that the

state did not produce sufficient evidence to prove deliberation and premeditation. We have considered the subject of premeditation and deliberation on a number of occasions. Such intent may and often must be inferred from circumstantial evidence. *Smith* v. *State*, 264 Ark. 874, 575 S.W.2d 677 (1979). Premeditation and deliberation are not required to exist for any particular length of time and may in fact be formed almost on the spur of the moment. *Westbrook* v. *State*, 265 Ark. 736, 580 S.W.2d 702 (1979). The necessary intent may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Parker* v. *State*, 290 Ark. 158, 717 S.W.2d 800 (1986); and *McLemore* v. *State*, 274 Ark. 527, 626 S.W.2d 364 (1982).

After the police officer and others investigated the scene, it was determined that the appellant himself had been shot in the mouth and was unable to speak. The officer then found Mrs. Garza in the back seat of the automobile with three bullet wounds. She died in the emergency room without regaining consciousness. Although appellant was unable to talk, he was questioned by the police and responded by shaking his head. They learned through this method of interrogation that the .45 caliber pistol was owned by his wife and that he had used the pistol to shoot her.

The medical examiner did an autopsy and testified at trial that Mrs. Garza received three bullet wounds. One was through the left hand from the palm to the back. Another shot, fired at a few inches, entered the right side of the decedent's nose and went on through the facial bones severing the cervical spine. Another shot was fired at close range into the back of Mrs. Garza's head. According to the examiner's testimony, she was most probably looking down at the time this bullet was fired. This third bullet passed through the midbrain. The body was also examined for drugs and alcohol and both tests were negative. A metals trace test was performed on both of the decedent's hands with no reaction.

One witness testified that he heard three gunshots on the evening of the murder. He looked out of a window of his home and saw the appellant and his wife stopped in their Oldsmobile in front of his driveway. He testified that he saw the appellant get out of the passenger side of the car and walk around to the other

side where the decedent was slumped across the steering wheel. The appellant then dragged and shoved his wife into the back seat of the car and drove away.

The defense was that the appellant was under the influence of drugs to such an extent that he was incapable of forming the necessary intent to commit first degree murder. However, it is apparent from the evidence that the three shots were fired deliberately with some time between each shot. The jury could have found premeditation and deliberation from the nature and extent of the wounds.

The second argument presented by the appellant is that the trial court erred by not granting a mistrial due to alleged prosecutorial misconduct during the closing argument. During his closing argument the prosecutor was discussing the three shots which were fired into the decedent's body. In doing so he exclaimed, "Pow, Pow, Pow!" The second instance of alleged misconduct was when the prosecutor made several remarks concerning the victim, including the number of years she had been married to the appellant and the number of children she had borne him. The appellant argues that these remarks violated the "Golden Rule," i.e., that it is improper for the prosecution to ask the jury to put themselves in the position of the victim. No citation of authority for this proposition is presented in the brief. Therefore, we will not pursue the "Golden Rule" argument further.

Prosecutorial conduct in closing argument has frequently been a subject dealt with by this Court. Many of our prior decisions on this subject are discussed in *Hill* v. *State*, 289 Ark. 387, 713 S.W.2d 233 (1986). One of the fundamental rules of proper trial procedure and tactics is that the closing arguments of both counsel must be confined to the questions in issue, the evidence introduced at trial, and all reasonable inferences and deductions which can be drawn therefrom. *Hill*, supra. We have many times reversed judgments of conviction where the prosecutor made prejudicial statements which had no basis in the evidence presented. See, e.g., *Simmons and Flippo* v. *State*, 233 Ark. 616, 346 S.W.2d 197 (1961). Likewise we have affirmed convictions when it was argued on appeal that the prosecutor made improper closing arguments. See, e.g., *Abraham* v. *State*, 274 Ark. 506, 625 S.W.2d 518 (1981). We discussed closing

arguments by the prosecutor in the case of *Floyd* v. *State*, 278 Ark. 342, 645 S.W.2d 690 (1983), where we stated: "Likewise, we agree with appellant that the state's attorney acts in a quasi-judicial capacity and it is his duty to use fair, honorable, reasonable and lawful means to secure a conviction in a fair and impartial trial."

We cannot prescribe an exact outline to be used by attorneys in closing arguments. However, we hold that the statements complained of here were within the perimeter of conduct permitted in closing arguments. We do not find anything about either of these expressions which violates the quasi-judicial function of the prosecutor to use fair, honorable, reasonable and lawful means to secure a conviction in a fair and impartial manner.

Affirmed.

GLAZE, J., concurring.