Curtis Bernard EASTER *v.* STATE of Arkansas

CR 91-130                                              816 S.W.2d 602

Supreme Court of Arkansas
Opinion delivered October 7, 1991

*The Lowber Hendricks Law Firm, P.A.*, by: *Lowber Hendricks*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Curtis Bernard Easter, was convicted of first degree murder and sentenced to forty years imprisonment in connection with the shooting death of Darin Waymack. On appeal, Easter contends the Trial Court erred by (1) failing to grant a directed verdict because there was no evidence he had the purposeful mental state necessary for the offense, (2) admitting evidence of a conversation between Easter and his roommate, Buddy Arnold, about Easter "pulling his own weight around the house," (3) instructing the jury that Easter's prior convictions could be considered for impeachment purposes although not introduced to impeach a witness, and (4) not instructing the jury on the lesser included offense of manslaughter.

We affirm the conviction. (1) There was evidence from which the jury could infer Easter had the purposeful mental state necessary for first degree murder. (2) The Trial Court did not abuse its discretion in admitting evidence of a conversation between Easter and his housemate because the evidence was probative of Easter's motive for committing the crime. (3) Easter

was not prejudiced by the instruction to the jury that his prior crimes could only be used for impeachment purposes. (4) As the jury found Easter guilty of first degree murder, not second degree murder, any error resulting from the failure to give a manslaughter instruction was cured.

Buddy Arnold and Easter lived together in a trailer outside Jacksonville. Arnold owned the trailer and Easter lived there as a tenant. About 7:30 p.m. one evening, Darin Waymack brought a half-gallon of whiskey and some marijuana cigarettes to the trailer. Chris, Kim, and Joe Wuneburger came to the trailer around midnight, and Dwain Foreman, Waymack's half-brother, arrived shortly thereafter. Everyone except Joe Wuneburger was either drinking alcoholic beverages or smoking marijuana that night. Easter testified that he, Waymack and Arnold also took LSD. Arnold denied taking LSD, and the autopsy revealed no evidence of LSD in Waymack's system. Arnold testified Easter was not acting normally and was staying to himself. Kim Wuneburger stated something was wrong with Easter that night.

Easter disappeared from the trailer for a time, and Arnold found him on his hands and knees, apparently ill. Arnold asked him what was wrong, and Easter said he didn't feel good and wanted a gun. Easter then came back inside the trailer, but left again. Arnold followed Easter and again asked him what was wrong. Easter said "Can't you see what's going on?" and "Man, could you just get me a gun?"

Easter was later found sitting in Waymack's car, and Waymack told Easter to get out. Easter got out of the car, walked up the front steps of the trailer, went inside, and pulled a loaded 12-gauge shotgun from beneath a couch. Easter cocked the gun twice, walked outside, and shot Waymack twice in the head and once in the shoulder in the presence of four witnesses. Joe Wuneburger testified that when Easter was entering the trailer to get the gun, he was in a "mad rage" and said "Darin is a . . . narc." Kim Wuneburger stated Easter looked "furious."

To provide a possible motive for the crime, the prosecutor elicited testimony from Arnold that he and Easter had a conversation about Easter doing more work around the house. Arnold further testified he had allowed Waymack to store some furniture in the trailer. As a result of the drugs and alcohol, Easter might have killed Waymack because he believed Arnold was moving

him out of the trailer and Waymack in. Ken Richardson, a drug abuse counselor for the State, testified Easter had an extensive drug abuse history. Easter admitted to Richardson he had a drug addiction.

Easter testified in his own defense and stated that, as a result of taking LSD, he didn't remember shooting Waymack. He did remember feeling nervous and sick that night. Easter stated he and Waymack were friends and had never argued before. He also explained he told Arnold he wanted a gun because he felt nervous and did not want to go back inside with a gun in the trailer.

Dr. Henderson, who examined Easter at the county jail, diagnosed him as having a chronic substance abuse problem. It was his opinion that, at the time of the shooting, Easter had a diminished mental capacity caused by taking drugs. Dr. Henderson testified Easter was experiencing delusional thinking that Waymack had a gun and was threatening him.

The judge instructed the jury on murder in the first degree and murder in the second degree. He refused to instruct on the lesser included offense of manslaughter. The jury found Easter guilty of murder in the first degree.

### 1. Directed verdict

A person commits first degree murder if he purposely causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Supp. 1991). "Purposely" is defined by Ark. Code Ann. § 5-2-202(1) (1987) as follows: "A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result." Easter contends the only evidence regarding his mental state at the time of the offense was that he was heavily drugged, experiencing delusions, and acting under a diminished mental capacity.

On appeal from a denial of a directed verdict, this Court views the evidence in the light most favorable to the appellee, in this case the State, and affirms if there is any substantial evidence to support the verdict. Evidence is substantial to support the verdict if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion or conjecture. *Williams* v. *State*, 304 Ark. 509, 804 S.W.2d 346 (1991).

Intent is seldom capable of proof by direct evidence and must usually be inferred from the circumstances surrounding the

killing. *Starling* v. *State*, 301 Ark. 603, 786 S.W.2d 114 (1990). The intent necessary for first degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Garza* v. *State*, 293 Ark. 175, 735 S.W.2d 702 (1987).

■ Kim and Joe Wuneburger testified that Curtis Easter shot Darin Waymack twice in the head and once in the shoulder with a shotgun. There was testimony that at the time of the killing, Easter was in a "mad rage" and "furious." Easter had twice asked Arnold for a gun. The State's Chief Medical Examiner testified Waymack was shot twice in the face and once in the right shoulder. Based on the type weapon used, the manner of its use, and the location of the wounds, the jury could reasonably have inferred Easter purposely killed Waymack.

■ Voluntary intoxication is not a defense. It is neither a statutory affirmative defense nor a common law defense negating intent in crimes requiring a purposeful mental state. *Cox* v. *State*, 305 Ark. 244, 808 S.W.2d 306 (1991); *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986).

### 2. *The conversation evidence*

On direct examination, the prosecutor asked Arnold whether he recalled a conversation in which he told Easter he should start "pulling his weight around the house." Easter argues that this question was improper under A.R.E. 608(b), 404(b), and 403; however, the basis of the objection at trial was that the testimony was irrelevant.

■ The judge ruled the conversation between Arnold and Easter was relevant in showing a possible motive for the killing. We find no error. A ruling on the relevancy of evidence is discretionary, and we will not reverse absent an abuse of discretion. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984); *Willett* v. *State*, 18 Ark. App. 125, 712 S.W.2d 925 (1986). We find no abuse of discretion.

### 3. *AMCI 203*

Defense counsel asked Easter during direct examination about his previous convictions for two counts of delivery of marijuana and one count of theft by receiving. The Trial Court instructed the jury that "evidence that the defendant has previously been convicted of a crime may be considered by you for the purpose of judging the credibility of the defendant, but not as evidence of his guilt." AMCI 203. Easter argues that because the

evidence was not introduced to impeach a witness, the jury instruction was erroneous.

Easter cites no authority and makes no argument convincing us he has suffered prejudice as a result of the instruction. This Court does not reverse without a showing of unfair prejudice. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985).

### 4. Manslaughter as a lesser included offense

In his last point, Easter contends that it was reversible error for the Trial Court to decline to instruct on the lesser included offense of manslaughter. The Trial Court instructed on first and second degree murder. When a lesser included offense has been the subject of an instruction, and the jury convicts of the greater offense, error resulting from failure to give an instruction on another still lesser included offense is cured. *Branscomb* v. *State*, 299 Ark. 482, 774 S.W.2d 426 (1989); *Harris* v. *State*, 291 Ark. 504, 726 S.W.2d 267 (1987). This is commonly referred to as "the skip rule."

Affirmed.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I agree with the majority opinion on all points except its reasoning on the trial court's refusal to give an instruction on manslaughter as a lesser included offense. This case, factually, does not lend itself to a manslaughter instruction in my opinion, because there was not sufficient evidence in the record to support it. For that reason the trial judge did not abuse his discretion in denying the instruction.

The majority, however, bases affirmance in point four on the "skip rule." The rationale for the skip rule, as explained by the majority, troubles me. What the majority is saying is if a jury convicts a defendant of an offense two grades more serious than the lesser offense, this "cures" the failure to give an instruction on that lesser offense. Such reasoning fails to consider the effect that an instruction on the lesser offense, not to mention defense counsel's closing argument, could have on a jury and its verdict. The skip rule suggests after-the-fact rationalization and for that reason is a concept this court needs to examine more closely when the circumstances warrant it.