Angela BROWN *v.* STATE of Arkansas

CA CR 98-763                                      991 S.W.2d 137

Court of Appeals of Arkansas
Division III
Opinion delivered May 5, 1999

*Bart Ziegenhorn,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Gil Dudley,* Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant, Angela Brown, was charged by amended information with first-degree murder in connection with the death of her child. After a jury trial, she was found guilty of second-degree murder and was sentenced to fifteen years' imprisonment and fined $5,000. On appeal, she contends that the trial court erred in admitting expert opinion that the death was the result of homicide. We affirm.

Appellant's two-year-old son died between 8:00 p.m. and 9:30 p.m. on September 9, 1997. It was undisputed that the cause of death was thermal burning, with the child having suffered third-degree burns to over twenty-five percent of his body. It was the State's theory of the case that appellant had intentionally dipped the child into extremely hot water and waited some six to twelve hours before seeking any medical attention. The State presented evidence that the child was burned no later than early afternoon, that appellant called her adult daughter to come home, and that the baby lay on the bed until that evening. Appellant's boyfriend testified that he went to appellant's apartment after work and found no one home. He went to a friend's home a block and a half away. At least thirty minutes later, appellant arrived pushing the baby in a stroller. She stated that the baby was not breathing and asked that someone call an ambulance. Others who were present attempted to resuscitate the child and called 911.

Paramedics arrived within five minutes and continued to work on the child, who was immediately transported to the hospital. Within minutes of arriving at the hospital, it was determined that the child had been dead for perhaps an hour or more. The emergency-room physician, Dr. David Cauley, testified that, while the burns had probably occurred within twelve hours, they "had not just happen[ed]. . . . [T]here had been plenty of time for the body to react to the burning." The doctor stated on cross-examination that, based on the location and pattern of the burns, it looked "like the child had been dipped. . . . The burns I saw are

typical dunking in hot water type burns." Before he told appellant that her son was dead, the doctor asked her when the burning had occurred. Appellant said, "I don't know. I wasn't there." Dr. Cauley described appellant's demeanor as "unconcerned."

West Memphis Detective Ken Mitchell testified that he interviewed appellant later that evening. He stated that she maintained that, while she was in the kitchen, the child climbed from the toilet to the bathroom sink, turned on the hot water, and burned himself. She went to get him when she heard his cries. She changed her story several times as it related to the length of time that passed between the injury and when she sought medical help, with the period ranging from just minutes to about eight hours. Detective Mitchell stated that appellant was very calm and relaxed throughout this initial interview. However, after he set up a video camera to record appellant's statement, she became emotional. The detective stated that she appeared to cry and moan, but he never saw any tears.

The State also presented the testimony of Assistant State Medical Examiner Daniel Konzelmann, who performed the autopsy. Dr. Konzelmann testified that the child had suffered third-degree burns to twenty-seven percent of his body. The child was burned on his feet, legs, buttocks, groin, lower back, and right hand. Conspicuously not burned were the areas behind the child's knees. Dr. Konzelmann also noted a sharp line of demarcation between the burned skin and unburned skin. He stated that he had researched several respected medical journals on the subject of thermal burning and described the various factors that have been determined relevant in deciding whether burns were accidentally inflicted. He stated that, based on his comparison of the leading research to his physical findings and the police reports, it was his opinion that the victim's injuries were inconsistent with the child having accidentally burned himself. Dr. Konzelmann pointed specifically to such factors as the pattern of the burns, with the distinct line of demarcation being suggestive of dipping and inconsistent with appellant's explanation; the location of the burns, with the unburned areas behind the knees being consistent with the child having reflexively drawn his legs up when dipped; the length of time between the injury and when medical attention

was sought; and the apparent lack of concern shown by appellant. Over appellant's objection pursuant to Ark. R. Evid. 704, the doctor was then allowed to state his opinion that the manner of the child's death was "homicide."

On appeal, appellant contends that the trial court erred in allowing Dr. Konzelmann to state his opinion that the manner of death was homicide. She concedes that the doctor could list and explain the factors that experts in the field look toward to determine the manner of death. However, she argues, the doctor's opinion that the death resulted from a homicide did more than merely embrace the ultimate issue under Rule 704; it told the jury what to do and thereby impermissibly mandated a legal conclusion. We find no reversible error.

■ ■ The admission of relevant evidence, whether opinion testimony or otherwise, is a matter within the sound discretion of the trial court, whose decision will not be reversed absent an abuse of discretion. *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). Rule 704 of the Arkansas Rules of Evidence provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Our supreme court has drawn a distinction between "an admissible opinion that 'touches upon the ultimate issue' and an opinion, not admissible, that 'tells the jury what to do.'" *Marts v. State*, 332 Ark. at 642, 968 S.W.2d at 48 (citing *Salley v. State*, 303 Ark. 278, 283, 796 S.W.2d 335, 338 (1990)). The clear trend of authority is not to exclude opinion testimony because it amounts to an opinion on the ultimate issue. *Marts v. State, supra; Davlin v. State*, 320 Ark. 624, 899 S.W.2d 451 (1995); *Long v. State*, 284 Ark. 21, 680 S.W.2d 686 (1984). Such opinion testimony is permissible provided that it does not mandate a legal conclusion. *Marts v. State, supra; Davlin v. State, supra.* Consistent with these rules, our supreme court has refused to reverse convictions where opinion testimony as to one element of an offense has been admitted. *See Salley v. State, supra* (in an attempted capital murder prosecution, police officer allowed to testify that defendant appeared to be shooting to kill; opinion testimony dealt with single element, leaving jury to decide ultimate issue of whether all necessary elements were proven beyond a

reasonable doubt); *Johnson v. State*, 292 Ark. 632, 732 S.W.2d 817 (1987) (in a rape case, an expert can offer an opinion that a child has been sexually abused); *Jennings v. State*, 289 Ark. 39, 709 S.W.2d 69 (1986) (in a child-rape case where the adult defendant's defense was that another juvenile in the home had committed the offense, a physician was allowed to opine that the victim had been penetrated by an adult penis; "[t]he opinion given was not the ultimate issue to be decided, that being whether [appellant] was guilty"); *Long v. State, supra* (in a prosecution for driving while intoxicated, police officer allowed to opine that defendant was intoxicated).

█ From our review of this record, we cannot conclude that the trial court abused its discretion in allowing Dr. Konzelmann to state his opinion that the manner of death was homicide. By so testifying, the doctor did no more than offer an opinion that the child's life was ended by the act of another person. "Homicide" is defined in *Black's Law Dictionary* 734 (6ᵗʰ ed. 1990) in pertinent part as follows:

> The killing of one human being by the act, procurement, or omission of another.

> Homicide is not necessarily a crime. It is a necessary ingredient of the crimes of murder and manslaughter, but there are cases in which homicide may be committed without criminal intent and without criminal consequences. . . . The term "homicide" is neutral; while it describes the act, it pronounces no judgment on its moral or legal quality.

Thus, the opinion testimony to which appellant objected was different from a conclusory statement that appellant was "guilty of murder." *See Salley v. State, supra; Jennings v. State, supra.* As the State argues, in determining appellant's guilt in this case, the jury was still left to decide whether appellant caused the child's death and, if so, her culpable mental state, if any.

█ In any event, we could find no prejudice as a result of the opinion in question in this case. Appellant's only objection was to Dr. Konzelmann's opinion that the manner of death was homicide. She did not object to Dr. Cauley's testimony that it appeared to him as though the child had been dipped in hot water

or to Dr. Konzelmann's conclusion that "the mother intentionally dipped her child" in hot water. Indeed, both statements were elicited by appellant's counsel on cross-examination. Neither doctor went anywhere near so far in his testimony on direct examination. Evidence that is merely cumulative of other evidence admitted without objection is not prejudicial. *Griffin v. State*, 322 Ark. 206, 909 S.W.2d 625 (1995).

Affirmed.

ROBBINS, C.J., and CRABTREE, J., agree.