Thomas A. HART *v.* STATE of Arkansas

CA CR 01-838            72 S.W.3d 540

Court of Appeals of Arkansas
Division IV
Opinion delivered April 24, 2002

*The Jesse Law Firm, P.L.C.*, by: *Mark Alan Jesse*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Thomas Hart appeals his convictions for first-degree false imprisonment and third-degree assault of a sheriff's deputy as found by the jury in Cleveland County Circuit Court. Though also charged with terroristic threatening of three women, he was acquitted on that count. He appeals, arguing as a single point for reversal that the trial court abused its discretion in permitting the State to question appellant's wife about his typical behavior when under the influence of alcohol, which appellant argued was irrelevant and highly prejudicial. We affirm.

The acts for which appellant was charged arose in the context of a domestic-disturbance call. Appellant and his wife were parties to a pending divorce action. On the afternoon of June 19, 2000, appellant appeared at the marital residence, where his wife Pat was living, to retrieve personal belongings from the garage. Appellant and Pat exchanged harsh words in the yard because appellant was unhappy with the condition of his belongings, and appellant threatened her, Pat summarizing it as a threat to "kick her butt." Pat's mother lived on the same property in another house nearby, and she came outside to ask if she should summon the sheriff. Appellant threatened that they would all be dead by the time the sheriff arrived. He left, taking a load of belongings, and made repeat trips.

The objectionable testimony came from appellant's wife, who stated on the stand that her husband of thirty-two years had a drinking problem. An objection as to relevancy was entered. The prosecutor and defense counsel approached the bench. The prosecutor explained that Pat's testimony would be that he had a

drinking problem and that he would get into rages while drunk. Defense counsel argued that this was highly prejudicial. The objection was overruled. Then, Pat testified that appellant was like Dr. Jekyll and Mr. Hyde; one was the nicest guy but the other was angry and agitated when under the influence of alcohol. Pat testified that when appellant arrived at the residence that afternoon he had been drinking, a fact appellant did not deny.

Later that evening at approximately 10:00 p.m., Pat, her mother, and Pat's friend Donna were in the house that Pat's mother occupied when Pat heard a tap at the window. Pat, fearing that appellant had a gun, screamed for them all to get down on the floor. Pat crawled to the telephone and called the sheriff. Two deputies, Marty Williams and Floyd Harper, responded to the call, but when they arrived, appellant was gone. Williams left to answer another call, while Harper remained on the premises, eventually seeing appellant drive by, whereupon, Harper followed and initiated a traffic stop.

Harper testified that after appellant pulled over, appellant exited the vehicle. Harper approached appellant at his truck, and appellant grabbed Harper's vest and forced a gun to his ear. Harper smelled the odor of intoxicants about appellant's person. Harper reached for appellant's gun and simultaneously reached for his own service revolver. Harper testified that appellant told him that if he did not get his hand off his (Harper's) gun, he would "blow my damned head off." Harper stated that appellant attempted to take Harper's service revolver, and they struggled for control. Hearing the radio dispatch from Harper's vehicle, appellant told Harper that if another officer came, he was going to blow Harper's head off. Appellant told Harper to lay down on the pavement, but Harper refused. Appellant then told Harper that when another officer arrived, "you're dead."

Williams had been recalled as backup to Harper, and when Williams arrived, he observed appellant holding Harper at gunpoint and heard appellant threatening to kill Harper. Williams retreated and watched the two from a distance. Appellant told Harper that he wanted Harper to get Pat to stop harassing him. Harper tried to calm appellant, assuring him that he would go talk

to her. Thereafter, appellant released Harper, got into his vehicle, and drove away, purportedly to his mother's house to await information. The deputies followed his vehicle and eventually pulled him over again, arresting appellant without serious incident in the second stop.

Chief Deputy Rodgers assisted in the arrest of appellant, and Rodgers testified that appellant had to be removed from his vehicle; that he possessed fourteen 380 hollow-point shells in his pocket; that his vehicle contained a holster, more ammunition, and a half-full vodka bottle; that he was not cooperative; and that he was very intoxicated. Williams testified that appellant's driving indicated impairment and that he could barely walk when he was brought to the sheriff's office due to intoxication; appellant continued to threaten to kill the officers as he was placed in a cell.

Appellant's testimony as to the encounters with law enforcement differed sharply. Appellant stated that in the first stop, the officer told him to leave the county and not to come back. Appellant denied ever holding a gun to the deputy's head. Appellant stated that he was upset at being stopped and challenged the officers to arrest him when he had done nothing wrong. He said that when the officers engaged blue lights the second time, he pulled over near his mother's house, and he was arrested without incident. Appellant acknowledged that he had a drinking problem that resulted in him seeking treatment in 1994, that he remained sober from 1994-1997, but that he had some drinks since then. He did not deny drinking about a pint of liquor the night he was arrested. He also agreed that his wife knew the signs of his drinking and that he sometimes became belligerent.

■ Appellant argues on appeal, as he did at trial, that the admission of his wife's opinion about his prior drinking was not relevant to the issues on trial and that if relevant, the relevance was outweighed by its unfair prejudice. Appellant concedes that his intoxication on the night in question was relevant. Appellant also argues that this was impermissible evidence of prior bad acts as prohibited by Ark. R. Evid. 404(b), but he did not raise this objection at trial. Because appellant's arguments are confined to the objections raised to the trial court, we do not consider this

aspect of his appellate argument. *See Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998).

■ ■ "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. A decision whether to admit relevant evidence rests in the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion. *Dansby v. State*, 338 Ark. 697, 1 S.W.3d 403 (1999); *Easter v. State*, 306 Ark. 615, 816 S.W.2d 602 (1991).

■ ■ Appellant states that permitting irrelevant and unduly prejudicial evidence of his drinking problem and associated behavior to the jury tainted appellant's credibility and mandates that we reverse. We disagree. First, the testimony regarding appellant's drinking problem and his typical behavior after having consumed alcohol was relevant to the issues at trial. He was undisputedly drunk that night, and Pat's testimony was probative of whether it was more or less likely that appellant would have behaved in a belligerent or angry manner toward the deputy while inebriated. Arkansas Rule of Evidence 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The balancing mandated by Rule 403 is a matter left to a trial court's sound discretion, and we will not reverse absent a showing of manifest abuse. *Mixon v. State*, 330 Ark. 171, 954 S.W.2d 214 (1997). There was no such manifest abuse of discretion here, for the most obvious reason that appellant cannot demonstrate prejudice. He cannot make such a showing in light of the fact that appellant testified after his wife completed her testimony and admitted that he was drinking that night, that his wife correctly stated that she knew the signs of his drinking, and that he sometimes became belligerent. Nothing in Pat's testimony varied from appellant's own on this topic. *See Griffin v. State*, 322 Ark. 206,

909 S.W.2d 625 (1995); *Brown v. State*, 66 Ark. App. 215, 991 S.W.2d 137 (1999). *See also* 1 John W. Strong, *McCormick on Evidence* § 55, at 246 (5th ed.1999) ("If a party who has objected to evidence of a fact himself produces evidence from his own witness of the same fact, he has waived his objection").

Affirmed.

JENNINGS and CRABTREE, JJ., agree.