Thomas BUTLER and Stacy Romand Butler *v.* STATE of
Arkansas

CR 90-86                                          797 S.W.2d 435

Supreme Court of Arkansas
Opinion delivered October 22, 1990

*Willard Proctor*, for appellant Thomas Butler.

*Robert L. Scull & Associates*, by: *Robert L. Scull*, for appellant Stacy Romand Butler.

*Steve Clark*, Att'y Gen., by: *Lynley Arnett*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellants, Thomas Butler and his son Stacy Butler, were jointly tried and found guilty of delivery of fourteen ounces of cocaine. The father, Thomas Butler, was sentenced to forty years in prison, and the son, Stacy, was sentenced to twenty years. Each has filed a separate appeal. We affirm both judgments of conviction in this one opinion.

Both appellants argue that the trial court erred in refusing to sever their cases. The factual background for the argument may be summarized as follows. An undercover agent called Stacy and asked to purchase $15,000 worth of cocaine. Stacy responded that he could handle the sale. The agent drove to Stacy's house, picked Stacy up, and they went to a restaurant to discuss the sale. Stacy said he would need to talk to his "source." At Stacy's request the agent took Stacy to the University Tower Building. Stacy's father, Thomas, a bond salesman, had an office in the University Tower Building. The agent went back to his motel room. Stacy later came to the motel room and reported that fourteen (14) ounces of cocaine would be there shortly. Almost three hours later Thomas drove Stacy's car onto the motel parking lot. Stacy waved to Thomas and invited the agent to go to the car and examine the quality of the cocaine. The agent went to the car and asked Thomas if he had the cocaine. He responded that he did. Thomas then handed the agent fourteen (14) ounces

of pure (89.2% base) cocaine. Thomas admitted at trial that he told the agent he had sold approximately 120 kilos of cocaine the year before and was attempting to turn the business over to Stacy who was preparing to go to Kansas City to negotiate a sale of two kilos of cocaine.

Thomas and Stacy were jointly charged with delivery of a controlled substance. Both employed Robert L. Scull as their attorney. A week before trial, Scull discovered that a conflict might exist between his clients and immediately suggested that Thomas get another attorney. Thomas employed Willard Proctor. Both then filed motions asking that the joint charge be severed because (a) their defenses were antagonistic and (b) Thomas's statements were not admissible against Stacy. The trial court denied the motion.

At trial, Thomas testified that Stacy had the cocaine hidden in their apartment but he did not know it. According to Thomas, Stacy had asked him to bring a box of tapes to the motel. When Thomas opened the box he realized it contained cocaine. Thomas stated that he realized Stacy was trying to make some money by selling cocaine and that Stacy's life might be in danger if he did not deliver the cocaine. "I did know it was enough quantity to where somebody could get hurt over it." He further stated that he saw how rough the purchaser looked and he thought "this guy can take this stuff and blow both of us away. So I started talking to him about what Stacy would be able to do for him later. I was thinking at the time that if I can get him to figure that it's worth it to not do anything to us and deal with us down the line then we got a chance to get out of here." Stacy did not testify.

Both appellants contend their defenses were antagonistic, and that the trial court erred in refusing to grant a severance. The appellants filed their motions prior to trial, see A.R.Cr.P. Rule 22.1(a), but neither presented any evidence at that time. Accordingly, we will not review the trial court's decision refusing a severance prior to trial. We consider only the denial of the motion which was renewed at the conclusion of the testimony. See A.R.Cr.P. Rule 22.1(b). That evidence does not show antagonistic defenses.

Antagonistic defenses arise when each defendant asserts his own innocence and accuses the other of committing the

crime. *McDaniel* v. *State*, 278 Ark. 631, 648 S.W.2d 57 (1983). One definition of antagonistic defenses is "when to believe one defendant, it is necessary to disbelieve the other." *McDaniel*, 278 Ark. at 637. Here, neither defendant asserted his own innocence and accused the other of committing the crime. Stacy offered no defense whatsoever. His stand was not antagonistic to anyone. Likewise, Thomas offered no defense. His testimony was only an explanation of the reason he committed the crime. Thus, the defenses were not antagonistic. *See Clines* v. *State*, 280 Ark. 77, 656 S.W.2d 684 (1983), *cert. denied*, 465 U.S. 1051 (1984).

Both parties also contend the trial court erred in refusing to grant a severance because Thomas's statements about other dealings in drugs were not admissible against Stacy. *See* A.R.Cr.P. Rule 22.3. The short answer to the argument is that the statements were made by a co-conspirator during the course and in furtherance of a conspiracy. A.R.E. Rule 801(d)(2)(v); *Spears* v. *State*, 280 Ark. 577, 660 S.W.2d 913 (1983). There need not be a conspiracy count in the indictment to make the statement admissible. *Smithey* v. *State*, 269 Ark. 538, 602 S.W.2d 676 (1980). There was sufficient evidence to show there was a conspiracy. *See Foxworth* v. *State*, 263 Ark. 549, 566 S.W.2d 151 (1978); AMI Criminal, 707. Appellant Stacy Butler also makes the same argument as a separate evidentiary argument. For the same reason, it has no merit.

Appellant Thomas Butler separately contends that the trial court erred in refusing to grant him a continuance. A motion for a continuance is addressed to the sound discretion of the trial judge, and his decision will not be reversed absent a clear abuse of discretion amounting to a denial of justice. *Walls* v. *State*, 8 Ark. App. 315, 652 S.W.2d 37 (1983), *affirmed*, 280 Ark. 291, 658 S.W.2d 362 (1983). The burden is on the appellant to establish prejudice and an abuse of discretion in denying the continuance. *Orsini* v. *State*, 281 Ark. 348, 665 S.W.2d 245 (1984), *cert. denied*, 469 U.S. 847. In exercising its discretion concerning a request for a continuance to obtain the presence of a witness, the following factors should be considered by the trial court: (1) the diligence of the movant, (2) the probable effect of the testimony at trial, (3) the likelihood of procuring the attendance of the witness in the event of a postponement, and (4) the filing of an affidavit, stating not only what facts the witness

would prove, but also that the appellant believes them to be true. Ark. Code Ann. § 16-63-402 (Repl. 1987); *Kelley* v. *State.* 261 Ark. 31, 545 S.W.2d 919 (1977). The denial of a motion which is not in substantial compliance with the statute is not an abuse of discretion. *Kelley, supra; Venable* v. *State*, 260 Ark. 201, 538 S.W.2d 286 (1976).

■ Thomas contends that the trial court should have given him more time to get two witnesses, a Mac Walker and an unnamed waitress at a cocktail lounge. However, he showed no diligence whatsoever in trying to get them. Thomas had counsel for a considerable period before trial, first, Scull, then Proctor. There is no showing that he told either attorney of these supposed witnesses anytime before the motion for the continuance was requested. Additionally, they were never subpoenaed, the likelihood of procuring their attendance was not made known, and neither an affidavit nor a proffer of their testimony was given. No prejudice in refusing to grant the continuance is shown. Under the circumstances the trial court did not err in refusing to grant appellant's request. *See Walls* v. *State*, 280 Ark. 291, 658 S.W.2d 362 (1983).

Both appellants next argue that the trial court erred in refusing to grant a mistrial because a juror talked to Stacy's mother. The conversation occurred after the State had rested its case. The incident was reported to the trial judge, and both the juror and Stacy's mother were questioned to see if extraneous prejudicial information had been improperly given to the juror. *See* A.R.E. Rule 606(b). The record disclosed that the conversation consisted of a discussion of Stacy's mother's marital history, the weather, how young people get in bad company, and that the juror would pray for appellants' family. The juror testified that she would be fair and impartial. Appellants both contend that the conversation shows that the juror already had decided that both appellants were guilty, and the trial judge erred in refusing a mistrial.

■ The juror had already heard the State's case. After hearing that evidence, the trial court held that it was not an indication of unfair prejudice for a juror to comment that she would pray for the accused, especially when she indicated that she would keep an open mind as to appellants' guilt or innocence until

after she had heard all the evidence. Whether a juror is unfairly prejudiced is a question addressed to the sound discretion of the trial judge, and his determination in that regard will not be disturbed absent an abuse of that discretion. *McFarland* v. *State*, 284 Ark. 533, 684 S.W.2d 233 (1985). The reason we give a great amount of discretion to the trial judge is that he is in a superior position to assess the possibility of prejudice. *King* v. *State*, 298 Ark. 476, 769 S.W.2d 407 (1989). Here, we cannot say the trial judge abused that discretion.

Both appellants, who are black, next argue that the trial court erred when it refused to order the prosecutor to give racially neutral reasons for his alleged exercise of peremptory challenges of black veniremen. No error is shown. Neither appellant made any *Batson* type of objection during the selection of the jury. After the panel had been selected both of appellants' attorneys announced the jury was "good." The jury was sworn. The trial judge then excused the members of the venire who had not been taken on this case. The State made its opening statement. The appellants waived theirs. Then, as the State's case-in-chief was beginning the appellants made a *Batson* motion. The trial court stated he wished to complete the testimony of the first witness before deciding the motion. After the first two witnesses had testified the court heard the motion. The trial court did not recall the race of veniremen who were peremptorily struck. He asked the appellants if they wanted to offer any evidence on the motion. They responded "no," that it was up to the State to offer evidence because the State had peremptorily struck four black veniremen. The court again asked if they wished to present any evidence on the motion. Again, they declined. The trial court held that it was too late for the appellants to make their motion, and they had not established a prima facie case of purposeful discrimination.

The appellants did not make their motion until the struck jurors had left, and then did not offer any evidence concerning the race of the struck jurors. As a result, there is no record to show the race of the struck jurors or even if the State exercised peremptory challenges. Further, four of the jurors chosen were black. Clearly, the appellants have not brought up a record sufficient to demonstrate error. *See Clay* v. *State*, 290 Ark. 54, 716 S.W.2d 751 (1986).

■ For the final point of appeal, appellant Stacy Butler contends the trial court erred in admitting some of the cocaine into evidence. The argument is wholly without merit. The State's chemist testified that he received a box with fourteen (14) separate bags of white substance. He took a small sample from each bag and tested it. Each sample was determined to be pure cocaine. The chemist then placed each of the samples, along with the remainder in each of the fourteen (14) bags, into one large bag. The large bag was offered into evidence. Appellant objected because the cocaine was not in its original fourteen (14) bags. The objection was overruled, and appellant assigns the ruling as error. The ruling was correct. As a condition precedent to its introduction, the State showed the chain of custody and that reasonable precautions were taken against the risk of adulteration or contamination. *See* A.R.E. Rule 901(a).

Both judgments are affirmed.