James COOPER, Jr., Ulonzo Gordon, and Jeremy Moten *v.*
STATE of Arkansas

CR 95-1113 919 S.W.2d 205

Supreme Court of Arkansas
Opinion delivered April 15, 1996
[Appellant Gordon's petition for rehearing denied
May 13, 1996.*]

*DUDLEY, J., not participating.

*Simes & Simes*, by: *Alvin Simes*, for appellant James Cooper, Jr.

*Donald A. Forrest*, for appellant Ulonzo Gordon.

*Paul J. Teufel* and *Lilly Law Firm*, by: *Martin E. Lilly* and *Kimberly D. Boling*, for appellant Jeremy Moten.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. James Cooper, Ulonzo Gordon, and Jeremy Moten were tried together and convicted of killing Otis Webster. Each was sentenced to life imprisonment without parole for capital murder. Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1993). Each of them has appealed. We affirm their convictions. Mr. Cooper and Mr. Gordon have several points of appeal each, and Mr. Moten has one. After stating facts the jury could have concluded from evidence produced by the State at the trial, we will address each appellant's points of appeal. Other facts will be stated as necessary in our discussion of each appellant's arguments.

On December 3, 1994, Otis Webster, the victim in this case, shot James Cooper 11 times. On January 28, 1995, Jeremy Moten shot and killed Otis Webster. On the latter date Rickey Lewis, Tyrone King, and Corey Sublett were seated in a car parked in a parking lot in a place referred to by witnesses as the "project area" in West Memphis. Tony Johnson drove up in a car in which Otis Webster was a passenger. Tony Johnson and Otis Webster then stood talking with Lewis, King, and Sublett when a third car arrived

carrying Cooper, Gordon, and Moten. Moten and Gordon got out and drew pistols. They told Johnson to get out of the way. Shots were fired, and Moten then chased Webster, shot him once, swore at him, and then shot him three more times as he lay on the ground. Cooper drove away with Gordon as his passenger and then picked up Moten.

### I. James Cooper

#### a. Sufficiency of the evidence

■ Mr. Cooper's defense was that he did not know a shooting would occur when he drove Gordon and Moten to the parking lot. He argues there was no evidence that he entertained any premeditation which is an element of capital murder as charged, so his motion for a directed verdict should have been granted. As the State points out in response, Cooper's liability for the crime is as an accomplice, Ark. Code Ann. § 5-2-403 (Repl. 1993), and the evidence need only be sufficient to show he encouraged or aided in the commission of the crime. *Riggins v. State,* 317 Ark. 636, 882 S.W.2d 664 (1994).

■ A motion for directed verdict is a challenge to the sufficiency of the evidence. *Stewart v. State,* 320 Ark. 75, 894 S.W.2d 930 (1995); *Evans v. State,* 317 Ark. 449, 878 S.W.2d 409 (1994). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Evans v. State, supra; Thomas v. State,* 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another, and in determining whether substantial evidence exists, we review the evidence in the light most favorable to the appellee. *Evans v. State, supra; Coleman v. State,* 314 Ark. 143, 860 S.W.2d 747 (1993).

■ Mr. Cooper drove to the scene of the crime with two men who exited his car and drew weapons. One or both of them fired at the victim who, according to an eyewitness, was eventually killed by one of them. Cooper then fled the scene with one of the shootists and allowed the second to enter his car shortly thereafter. When the evidence tending to prove those facts is combined with the evidence that Mr. Cooper had a strong motive to injure or kill Mr. Webster we can hardly conclude the evidence is insufficient to

support his conviction as an accomplice.

### b. Severance

■ Mr. Cooper sought to have his trial severed from those of Mr. Gordon and Mr. Webster. The factors to be considered in deciding whether to grant a severance of the trial of one defendant from that of another are: (1) antagonistic defenses; (2) difficulty in segregating evidence; (3) lack of substantial evidence implicating one defendant except for the accusation of another; (4) deprivation by one defendant of another's peremptory challenges; (5) compulsion of testimony by one defendant if another chooses to testify; (6) disparity in criminal records; and (7) stronger circumstantial evidence against one defendant than against another. *Cloird* v. *State*, 314 Ark. 296, 862 S.W.2d 211 (1993); *Cox* v. *State*, 305 Ark. 244, 808 S.W.2d 306 (1991); *McDaniel* v. *State*, 278 Ark. 631, 648 S.W.2d 57 (1983). Whether to grant the motion lies within the discretion of the Trial Court and a ruling will not be disturbed on appeal absent an abuse of that discretion. *Holloway* v. *State*, 293 Ark. 438, 738 S.W.2d 796 (1987); *McDaniel* v. *State, supra.*

■ Mr. Cooper argues his trial should have been severed because his defense was antagonistic to that of his codefendants, the evidence against them was stronger than against him, and the evidence could not successfully be segregated. We find no merit in those claims. As a matter of logic, there is no antagonism between Cooper's defense that he did not know what Gordon and Moten planned to do and their self-defense claim. Antagonistic defenses arise when each defendant asserts his innocence and accuses the other of committing the crime. *Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990); *McDaniel* v. *State, supra.* That is not the case here. There is no reason the jury could not have believed both Cooper's claim of lack of knowledge and the self-defense claim of Gordon and Moten had it found their witnesses credible.

■ As mentioned above, the evidence of Mr. Cooper's participation as an accomplice was substantial. He has not demonstrated that, had he been tried separately, the evidence about the actions of Gordon and Moton would not have been admitted to prove Cooper's status as an accomplice. He thus has demonstrated no prejudice in having one jury hear it all. There was no abuse of discretion.

### c. Jury selection

Mr. Cooper contends the State improperly exercised a peremptory challenge of African-American venire person Sharon Dunigan. Mr. Cooper objected on the ground that the reason was racial in nature and thus a violation of his rights as explained in *Batson* v. *Kentucky,* 476 U.S. 79 (1986). When the peremptory challenge to Ms. Dunigan occurred, two African-American jurors had been seated. The State had struck three caucasian venire members. In response to the objection, the prosecutor said Ms. Dunigan was struck because she would not look him in the eye when answering *voir dire* and, although she was a long-time resident of the neighborhood in which the killing occurred, she said she knew none of the persons involved.

■ Mr. Cooper's argument focuses on the State's explanation, but we need not evaluate it because the Trial Court's ruling, with which we agree, was that no *prima facie* case of discrimination had been presented. When a *Batson* objection is raised the defendant must make a *prima facie* case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a *prima facie* case, the State has the burden of showing the challenge was not based on race. Only if the defendant makes a *prima facie* case and the State fails to give a facially neutral reason for the challenge is a court required to conduct a sensitive inquiry. *Sims* v. *State,* 320 Ark. 528, 900 S.W.2d 508 (1995); *Franklin* v. *State,* 314 Ark. 329, 863 S.W.2d 268 (1993).

■ A *prima facie* case may be established by: (1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportionate exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions, or statements by a prosecuting attorney during voir dire suggesting racial motive. *Heard* v. *State,* 322 Ark. 553, 910 S.W.2d 663 (1995); *Gilland* v. *State,* 318 Ark. 72, 883 S.W.2d 474 (1994). The standard of review for reversal of a *Batson* ruling is whether a court's findings are clearly against the preponderance of the evidence. *Sims* v. *State, supra.*

■ The prosecution's use of a peremptory challenge to remove the only black prospective juror may establish a *prima facie* case, *Mitchell* v. *State,* 295 Ark. 341, 750 S.W.2d 936 (1988); however, one peremptory strike of a minority prospective juror, with

no additional facts or context in which it can be evaluated, is not sufficient. *Heard* v. *State, supra; See Acklin* v. *State*, 319 Ark. 363, 896 S.W.2d 423 (1995); *see also Bradley* v. *State*, 320 Ark. 100, 896 S.W.2d 425 (1995).

 The presence of minority members on the jury, while by no means determinative of the question of whether discrimination occurred, is significant, *Heard* v. *State, supra; Thompson* v. *State*, 301 Ark. 488, 785 S.W.2d 29 (1990), and we find nothing in the context of the challenge to Ms. Dunigan which would have required the State to explain or the Trial Court to have delved into the matter.

### d. Suppression of Testimony

Officer Bill Durham investigated the incident in which Mr. Cooper was shot by Otis Webster. Officer Durham testified he spoke with Cooper while Cooper was in the hospital recovering from his wounds and advised him to come to the police station later to file a complaint but that Cooper had not done so.

Mr. Cooper claims that any testimony regarding the fact that he failed to sign an affidavit for an arrest warrant after the victim shot him was inadmissible. At trial he claimed that the evidence was hearsay because Detective Durham had not seen the shooting, and that the evidence was not relevant. On appeal he argues that the jury was allowed to hear speculative testimony that he did not sign the affidavit because he planned to kill the victim. He contends that was prejudicial and resulted in denial of a fair trial.

 Mr. Cooper ignores the fact that the Trial Court admonished the jury that any evidence of the prior altercation would go only to the motive behind the murder and specifically admonished the jury not to consider the fact that Cooper failed to seek a warrant for Webster's arrest. Evidence of motive behind a criminal offense is admissible. *Williams* v. *State*, 321 Ark. 344, 902 S.W.2d 767 (1995). Where the purpose of evidence is to disclose a motive for killing, anything and everything that might have influenced the commission of the act may, as a rule, be shown. *See Sullivan* v. *State*, 171 Ark. 768, 286 S.W. 939 (1926). Assuming, but not deciding, that evidence of failure to seek a warrant was inadmissible, we have been given no basis for holding Mr. Cooper was prejudiced by it in view of the admonishment to the jury.

### e. Juror bias

To preserve for appeal an objection to an empaneled juror, a party is required to have exhausted his or her peremptory challenges and must show he or she was forced to accept a juror who should have been excused for cause. *Patterson v. State*, 318 Ark. 358, 885 S.W.2d 667 (1994); *Dillon v. State*, 317 Ark. 384, 877 S.W.2d 915 (1994). Mr. Cooper contends the Trial Court erred by seating four biased jurors. The record does not show the final composition of the jury. Although we have some doubt about whether Mr. Cooper has demonstrated that he had exhausted all his peremptory challenges before challenging the jurors in question, *See Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877 (1988), we will discuss the merits of the challenges for cause to the jurors.

### i. Juror Hughes

Mr. Cooper contends juror Hughes should have been dismissed because he admitted he had been the victim of an armed robbery perpetrated by an African-American male. Without citation to authority, Mr. Cooper submits that the incident created bias because he is African-American. The record shows that when questioned, Mr. Hughes assured counsel for Mr. Cooper that he did not hold any grudges and would listen fairly to the defendants case. The Trial Court denied his motion to dismiss Mr. Hughes for cause.

### ii. Juror Gitchell

Ms. Gitchell stated she was the Police Services Coordinator and that she coordinated crime prevention programs in West Memphis. When questioned about her ability to be an impartial juror, she stated that she thought she could be fair. Mr. Cooper's motion to strike for cause was denied.

### iii. Juror Whited

Mr. Cooper contends that Ms. Whited should have been dismissed because her husband was a police officer with the West Memphis police Department. The record discloses that Ms. Whited was struck from the panel.

### iv. Juror Williams

Mr. Cooper submits that Mr. Williams was biased because he was involved in an automobile accident and the other driver was an

African American. Mr. Williams stated he was not prejudiced due to the incident and could be fair and impartial. Mr. Cooper did not make an objection to the Trial Court regarding the alleged bias of Mr. Williams.

■ Persons comprising the venire are presumed to be unbiased and qualified to serve. *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995); *Franklin v. State, supra.* The burden is on the party challenging a juror to prove actual bias, and when a juror states that he or she can lay aside preconceived opinions and give the accused the benefit of all doubts to which he is entitled by law, a trial court may find the juror acceptable. *Scherrer v. State, supra.* There was no error with respect to challenges for cause of any of the jurors mentioned in Mr. Cooper's argument.

## II. Ulonzo Gordon

### a. Sufficiency of the evidence

The evidence supporting the State's claim that Ulonzo Gordon was an accomplice of Jeremy Moten in the killing of Otis Webster is strong. We need not repeat the references to authorities cited in segment *I.* of this opinion. We need only reiterate the evidence relating to Mr. Gordon.

■ Although he later recanted his statement that Gordon got out of Cooper's car and drew a pistol as the firing began, Tyrone King initially testified it happened. Tony Johnson gave similar testimony which was not recanted. There was also testimony that Gordon fled the scene with Cooper. The evidence was clearly sufficient to support a finding of guilt.

### b. Severance

Ulonzo Gordon joined severance motions made by Cooper and Moten at the trial. Much of his argument on appeal that his trial should have been severed was not presented to the Trial Court, so we will not consider it. We will, however, discuss his main point which is that severance should have been granted because of "antagonistic defenses" and his related argument concerning the inability at the trial to assure segregation of the evidence.

■ Mr. Gordon points out that Mr. Cooper wanted to keep the testimony of Officer Durham out of evidence and Mr. Moten wanted it in to support his self-defense claim. He then

argues that Officer Durham's testimony exemplified his claim that he had a defense antagonistic to Cooper or Moten. Although he states under another point in his argument that he was not claiming self defense, he does not at any point say what his defense was. We perceive the burden of Mr. Gordon's argument here to be that the testimony of Officer Durham leading to an inference of a revenge motive for the killing was relevant to Cooper but not to him and that it would not have been admitted had Gordon been tried separately. He makes that statement without convincing argument or reference to authority, and we cannot say it is so.

### c. Lesser offenses

Mr. Gordon argues error on the part of the Trial Court in failure to instruct the jury on the lesser included offenses of manslaughter and negligent homicide. He offers no authority on the point and argues only that the definitions of those crimes more closely fit the evidence related to his conduct than the murder instruction.

According to Ark. Code Ann. § 5-10-104 (Repl. 1993):

(a) A person commits manslaughter if:

(1) He causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believes them to be;

* * *

(3) He recklessly causes the death of another person;

* * *

Ark. Code Ann. § 5-13-204 (Repl. 1993) provides:

(a) A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person.

(b) Aggravated assault is a Class D felony.

 With respect to the "negligence" aspect of the proposed manslaughter instruction and with respect to the aggravated assault instruction we need only point out that Mr. Gordon could not have been prejudiced by any error in the Trial Court's refusal to give those instructions. He was convicted of capital murder. The Trial Court instructed on murder in the first degree and murder in the second degree. The jury convicted Mr. Gordon of capital murder. "When a lesser included offense has been the subject of an instruction, and the jury convicts of the greater offense, error resulting from failure to give an instruction on another still lesser included offense is cured. *Branscomb* v. *State,* 299 Ark. 482, 774 S.W.2d 426 (1989); *Harris* v. *State,* 291 Ark. 504, 726 S.W.2d 267 (1987). This is commonly referred to as 'the skip rule.' " *Easter* v. *State,* 306 Ark. 615, 816 S.W.2d 602 (1991).

Mr. Gordon makes no argument that the "extreme emotional disturbance" part of his proffered manslaughter instruction applied to his acts.

### III. Jeremy Moten

Mr. Moten has only one point of appeal. It concerns failure of the Trial Court to instruct on manslaughter. More particular is his complaint that he was entitled to have the jury consider whether he was under excusable "extreme emotional disturbance."

 The request for that part of the manslaughter instruction concerning "extreme emotional disturbance for which there is a reasonable excuse" presents a problem excepting it from the skip rule in these circumstances because it does not deal with a lesser culpable mental state. *Rainey* v. *State,* 310 Ark. 419, 837 S.W.2d 453 (1992). It was not error, however, for the Trial Court to have refused that aspect of the manslaughter instruction in this case because it was combined in the instruction proffered with language which would have allowed the jury to find Mr. Moten acted "recklessly."

The jury apparently believed that Mr. Moten was a principal or accomplice in a premeditated, deliberate murder. The evidence supported that conclusion. The evidence to which Mr. Moten refers in support of his manslaughter instruction might have led the jury to conclude he acted in self defense. Nothing in the evidence

suggested he might have acted "recklessly." It would not have been proper to have given the instruction presented to the Trial Court; thus, there was no error.

### IV. Rule 4-3(h)

In accordance with Rule 4-3(h) the record of trial has been examined, and no erroneous and prejudicial rulings adverse to the appellants have been found.

Affirmed.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I agree with the majority on all points but one. The majority relies on the "Skip Rule" to justify not instructing on manslaughter and negligent homicide. As I wrote in *Easter* v. *State*, 306 Ark. 615, 816 S.W.2d 602 (1991) (J. Brown concurring), the "Skip Rule" is used to justify not giving an instruction after the fact based on a verdict for a greater offense. The rationale is that no prejudice was caused by failure to give the instruction. Yet, had the appropriate instruction been given and defense counsel had the opportunity to argue that instruction, the verdict might well have been different.

Nevertheless, I would affirm because there was no rational basis for giving the two instructions, and they would have confused rather than assisted the jury. *See Findley* v. *State*, 307 Ark. 53, 818 S.W.2d 242 (1991). For that reason, I concur.