William Dillard TAYLOR *v.* STATE of Arkansas

CR 97-1240                    974 S.W.2d 454

Supreme Court of Arkansas
Opinion delivered September 24, 1998

*Craig Lambert*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Ass't Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Appellant William Dillard Taylor was convicted of raping his daughter. He was sentenced to life imprisonment. Mr. Taylor argues that the Trial Court erred in denying his motion for change of venue due to pretrial publicity. We hold that the Trial Court did not abuse its discretion in denying the motion. In his second point on appeal, Mr. Taylor contends that the Trial Court erroneously refused to excuse a juror for cause based on the juror's confusion as to the standard of proof required for a conviction in a criminal case. We hold that the Trial Court did not abuse its discretion in refusing to excuse the juror because the juror indicated that he could apply the law. Mr. Taylor also argues that the Trial Court erred in admitting the testimony of Mr. Taylor's other children and stepchildren, who testified that Mr. Taylor sexually abused them. We hold that the testimony was properly admitted pursuant to the pedophile exception to Ark. R. Evid. 404(b). In his final point on appeal, Mr. Taylor argues that the Trial Court erred in denying his motion for mistrial due to the prosecuting attorney's reference to the testi-

mony of the children and the stepchildren in his opening statement. We hold that the Trial Court did not abuse its discretion in refusing to grant the motion because the evidence was admissible and because the Trial Court's admonishment to the jury cured any prejudice.

### 1. Pretrial publicity

In his first point on appeal, Mr. Taylor argues that the Trial Court erred in denying his motion for change of venue due to pretrial publicity. We disagree.

Mr. Taylor filed a pretrial motion seeking a change of venue and attached several newspaper articles regarding the case as exhibits to his motion. In the motion, Mr. Taylor argued that because of the pretrial publicity, he could not receive a fair trial in Crawford County or Sebastian County. The day before the trial, the Trial Court held a hearing on the venue motion. Mr. Taylor first introduced the testimony of Marvin Honecutt, an attorney in Van Buren, who testified that he had seen extensive television and newspaper coverage regarding Mr. Taylor and that most of the coverage was in regard to police questioning of Mr. Taylor about the disappearance of Morgan Nick and the apparent murder of Melissa Witt. He further stated that he believed that the jurors in Crawford County would try to give anyone a fair trial, but that in spite of their best efforts, he would be concerned that the thought that Mr. Taylor is the person who killed Melissa Witt or abducted Morgan Nick would be in the back of their mind. On cross-examination, Mr. Honecutt testified that he had not gone throughout the county visiting people about this matter and that he did not know the pulse of the community.

Stephen Parker, a regional reporter for the *Southwest Times Record* in Van Buren who reports on Crawford and Franklin Counties, testified that the newspaper is the daily major newspaper in Sebastian County, but he was not sure of its status in Crawford County. He further testified that he had not visited extensively with the residents of Crawford County concerning their feelings about Mr. Taylor and that he lived in Fort Smith rather than Crawford County.

Mr. Parker testified as to three articles that he wrote for the newspaper in 1996. He also testified as to a fourth article written by another reporter in 1996. The articles state that Mr. Taylor had been "on the run" from law enforcement authorities and was captured in Oklahoma by a game warden. The articles also state the police planned to question Mr. Taylor about the slaying of Melissa Wick and the disappearance of Morgan Nick, and that Mr. Taylor faced three felony rape warrants involving children between the ages of six and fourteen.

Kenneth Fry, a reporter for the *Press-Argus-Courier* in Van Buren, testified that the newspaper is a bi-weekly newspaper that is available by subscription or at a newsstand. He stated that he did not know whether the *Press-Argus-Courier* would reach most subscribers in Crawford County, but that the newspaper had about 7,000 subscribers. He testified regarding articles about Mr. Taylor's case that appeared in the *Press-Argus*. On cross-examination, Mr. Fry testified that he had not visited with people out in the community in Crawford County concerning Mr. Taylor or his connection with these cases.

Mr. Taylor also introduced a wanted poster which appeared in Crawford County stores. The poster includes a picture of Mr. Taylor with the caption, "Have you seen this man?" The poster also includes a letter from an anonymous writer which states that Mr. Taylor sexually abused the author of the letter and her sisters.

The Trial Court denied the motion for change of venue on the ground that the witnesses did not exhibit any familiarity with the citizens throughout the county, and that the burden is on the defendant to show that it is the opinion of the citizenry that the defendant could not have a fair trial in the county.

The standard of review for denial of a motion for change of venue is whether there was an abuse of discretion by the trial court. *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998). Mr. Taylor failed to submit affidavits to support his motion for change of venue as required by Ark. Code Ann. § 16-88-104(a) (1987) ("The truth of the allegations in the petition shall be supported by the affidavits of two (2) credible persons who are qualified electors, actual residents of the county, and not related to the

defendant in any way."). Three witnesses did testify at the hearing on the matter. A criminal cause may be removed to another county when the minds of the inhabitants of the original county "are so prejudiced against the defendant that a fair and impartial trial cannot be had in that county." Ark. Code Ann. § 16-88-201; *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998). However, a motion for change of venue is not properly supported when the movants, affiants or witnesses are unable to show in their testimony that they have a general knowledge as to the state of mind of the inhabitants of the whole county or that they are cognizant of prejudice existing throughout the county. *Berry v. State*, 290 Ark. 223, 235, 718 S.W.2d 447 (1986). Those witnesses who state the appellant cannot receive a fair trial must be able to show that they either have a general knowledge as to the state of mind of the inhabitants of the whole county, or they are cognizant of prejudice existing throughout the whole county. *Bell v. State*, 324 Ark. 258, 263, 920 S.W.2d 821 (1996). *See also Noel v. State*, 331 Ark. 79, 84, 960 S.W.2d 439 (1998) ("[A]ffidavits that cite little or nothing beyond an affiant's own convictions that a fair trial is not possible are insufficient."). It is clear that the testimony at the hearing failed to satisfy this test. None of the witnesses testified that they had a general knowledge as to the state of mind of the inhabitants of the whole county or that they were aware of prejudice existing throughout the county.

██ ██ In addition, there can be no error in the denial of a change of venue if an examination of the jury selection shows that an impartial jury was selected and that each juror stated he or she could give the defendant a fair trial and follow the instructions of the court. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997). The defendant is not entitled to jurors who were totally ignorant of the facts surrounding the case, as long as they can set aside any impression they have found and render a verdict solely on the evidence at trial. *Id.* In this case, none of the veniremen who were selected as jurors could remember anything about Mr. Taylor. Mr. Taylor concedes that the voir dire does not show that the jury was comprised of jurors who were "consciously biased" against him. In fact, of the twenty-four jurors who were voir dired, eighteen knew nothing about the case. Of the remaining six

potential jurors, four had varying degrees of knowledge about the case and were excused. The other two potential jurors were not asked about their knowledge, and they were excused for other reasons.

■ In light of the testimony of the witnesses and the responses of the jurors, we hold that the Trial Court did not abuse its discretion in denying Mr. Taylor's motion.

### 2. Juror challenge

Mr. Taylor also argues that the Trial Court erred in refusing to excuse a juror for cause based on the juror's apparent confusion as to the requirement that the State prove guilt beyond a reasonable doubt in criminal cases. When the juror, in response to defense counsel's question, indicated that he thought that a balancing procedure should be used to determine guilt rather than requiring guilt beyond a reasonable doubt, defense counsel challenged the juror for cause.

The Trial Court asked the juror whether he would ignore an instruction that he must be convinced beyond a reasonable doubt before he could find Mr. Taylor guilty. The juror responded "no" and indicated that he did not understand the defense counsel's question. The Trial Court then explained the difference between the preponderance-of-the-evidence standard of proof in civil cases and the beyond-a-reasonable-doubt standard of proof required in criminal cases two times. After both explanations, the juror responded that the standards were the same to him. The Trial Court then asked the juror if he understood that he was under a higher duty in a criminal case than he was in a civil case, and the juror responded "yes." The Trial Court explained the difference the standard of proof in a criminal case and the standard in a civil case for a third time and asked the juror if he thought one standard was higher than the other. Mr. Wagner responded, "Reasonable doubt is still reasonable." However, the juror, in response to the Trial Court's question, stated that he would follow the Trial Court's instructions as to the law. Defense counsel renewed his objection and pursued the matter with the juror who stated that "Yes, I feel that this person is guilty" is the same as being con-

vinced beyond a reasonable doubt," and that whether he was on a criminal or civil jury, he would have to be convinced "they" are right. Mr. Taylor again challenged for cause. The Trial Court responded that it believed that the discussion involved "semantics" and asked the juror how convinced he would have to be in order to find Mr. Taylor guilty. The juror responded "beyond a reasonable doubt." Mr. Taylor renewed his objection again. The Trial Court asked the juror whether he would follow its instructions, and the juror responded in the affirmative. The Trial Court declared the juror to be a good juror. Because Mr. Taylor had exhausted his peremptory challenges, the juror was seated on the jury.

██ ██ The decision to excuse a juror for cause rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995). Persons comprising the venire are presumed to be unbiased and qualified to serve. *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996). The burden is on the party challenging a juror to prove actual bias, and when a juror states that he or she can lay aside preconceived opinions and give the accused the benefit of all doubts to which he is entitled by law, a trial court may find the juror acceptable. *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996). However, we have also recognized that the bare statement of a prospective juror that he can give the accused a fair and impartial trial is subject to question. *Pruett v. State*, 282 Ark. 304, 669 S.W.2d 186 (1984). Any uncertainties that might arise from the response of a potential juror can be cured by rehabilitative questions. *Cox v. State*, 313 Ark. 184, 853 S.W.2d 266 (1993).

The State argues that the Trial Court properly refused to excuse the juror for cause because he indicated that he could set aside any preconceived notions concerning the definition of reasonable doubt and follow the Trial Court's instructions.

██ It is generally held that a juror, who holds a mistaken view of the law as to a defense, a particular principle of law, the burden of proof, the presumption of innocence or the weight or effect of the evidence, but is willing to abide by the law as

explained or stated by the court and not by his own ideas, is not disqualified for cause. *Jones v. State*, 264 Ark. 935, 576 S.W.2d 198 (1979). In the *Jones* case, we affirmed the Trial Court's refusal to dismiss two potential jurors for cause when the jurors were confused as to whether the defendant had to put on any evidence in his defense. One potential juror stated that she would follow the law that was given to her, and the second potential juror eventually said that she understood that the defendant did not have to say anything in his defense. *Id* at 936.

■ We hold that the juror had a sufficient understanding of the law and that the Trial Court did not abuse its discretion in refusing to dismiss the juror for cause. The juror stated that he would follow the law and that he would have to be convinced beyond a reasonable doubt in order to find Mr. Taylor guilty.

### 3., Ark. R. Evid. 404(b)

Mr. Taylor argues that the Trial Court erred in admitting the testimony of his children and stepchildren who testified that Mr. Taylor abused them. Prior to trial, Mr. Taylor filed a motion in limine in which he argued that the Trial Court should exclude their testimony. At a pretrial hearing, the Trial Court considered the motion and found that it was inclined to allow the evidence but that it wanted the opportunity to know more about the evidence before determining whether it was overly prejudicial.

The victim, Mr. Taylor's daughter, testified that when she was four years old, Mr. Taylor began molesting her, and that he later raped her on more than one occasion. She stated that the abuse often involved her siblings and other men. She also stated that Mr. Taylor threatened to kill her mother and her sisters if she told anyone about the abuse. Mr. Taylor's children and stepchildren testified that while they were in his home or in his care, he began molesting them. All but one witness testified that Mr. Taylor later began raping or attempted to rape them. Like the victim in the case, some of the witnesses testified that these incidents involved their siblings or other men. Several of the witnesses offered testimony regarding Mr. Taylor's threats against them and their family if they told anyone about the abuse.

■ Because the Trial Court did not rule on Mr. Taylor's motion in limine, he must object to the testimony at trial in order to preserve his point for appeal. *See Massengale v. State*, 319 Ark. 743, 894 S.W.2d 594 (1995). Mr. Taylor did not object to the testimony of all witnesses at trial; however, even if he had preserved this point for appeal as to all witnesses, we must affirm based on the pedophile exception to Ark. R. Evid. 404(b).

Arkansas R. Evid. 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ ■ In recognizing the pedophile exception to Ark. R. Evid. 404(b), this Court has stated as follows:

> When the alleged crime is child abuse or incest, we have approved allowing evidence of similar acts with the same or other children in the same household when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship.

*Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998) (quoting *Mosley v. State*, 325 Ark. 469, 929 S.W.2d 693 (1996)). The rationale for recognizing the exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Mosley v. State*, 325 Ark. 469, 929 S.W.2d 693; *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996) (quoting *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994). While there is admittedly extensive testimony from witnesses as to Mr. Taylor's abuse of them, the testimony of the children and stepchildren present a classic case of evidence that is admissible pursuant to the pedophile exception. Like the victim, the witnesses lived in the same household as Mr. Taylor or were in his care when the abuse occurred. In addition, the abuse of the witnesses was strikingly similar to the abuse of the victim. Like the victim, the witnesses testified that Mr. Taylor began molesting and later raped them. Again like the victim, they stated that the abuse sometimes involved their siblings or other

men, and that Mr. Taylor threatened to harm them and their family if they told anyone about the abuse.

■■■■ The Trial Court did not err in concluding that the probative value of the evidence outweighed the danger of unfair prejudice because the evidence involves similar crimes against children who were in Mr. Taylor's care or household at the time that the incidents occurred. *See Hernandez v. State*, 331 Ark. 301, 311, 962 S.W.2d 756 (1998). As to Mr. Taylor's argument that the testimony of the witnesses should be excluded pursuant to Rule 403 because the testimony comprised the "vast bulk of the State's case" and that the jury was willing to impose the maximum sentence based on the testimony, Mr. Taylor did not make a cumulative error argument below and the testimony was admissible. Mr. Taylor also argues that the additional evidence was not needed to show that he intended to commit the rape or that he was the person who committed the abuse; however, the pedophile exception allows testimony to show that the perpetrator has a "proclivity" for the sexual abuse of children. *See Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998). "The basis of the pedophile exception to Rule 404(b) is our acceptance of the notion that evidence of sexual acts with children may be shown as that evidence demonstrates a particular proclivity or instinct." *Id.*

■■■■ Mr. Taylor also argues that this Court should consider abandoning the pedophile exception. In the *Hernandez* case, we noted that the Supreme Court of Missouri had rejected the pedophile exception, but that Arkansas R. Evid. 403 provides the necessary "parameters."

### 4. Opening statement

Mr. Taylor argues that the Trial Court erred in denying his motion for mistrial based on the prosecuting attorney's reference, in the State's opening statement, to the testimony of Mr. Taylor's children and stepchildren. After the prosecuting attorney stated that Mr. Taylor was on trial for the charge of raping his daughter and that Mr. Taylor's children and stepchildren were going to testify that he molested them, he stated as follows:

> I think when you listen to all of this testimony and all the evidence today and tomorrow, there will be no doubt in your mind that William Dillard Taylor not only raped [the victim in this case] but he also raped and molested several of his other children.

At this point, Mr. Taylor objected and moved for a mistrial as follows: "We are here today on one specific charge and the prosecutor has just alleged that there were other wrongful acts that occurred." The Trial Court denied the motion and admonished the jury as follows:

> Ladies and gentlemen of the jury, it is true as defense counsel has stated that the defendant is charged with only one alleged violation. There are times when evidence of other crimes is admissible to show intent and any number of other things, but he is only charged with having violated the particular alleged violation in the information, and is not on trial for the other incidents that may be admitted for other purposes.

The Trial Court refused Mr. Taylor's request that it refer to the other incidents as "alleged" incidents, and then stated as follows to the jury:

> I want to clarify the statement I made earlier. The defendant is on trial for a specific violation as the prosecutor and the deputy prosecutor have indicated. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person or to how that he acted in conformity therewith. It may be admissible for other purposes. These purposes might be showing opportunity, intent, preparation, knowledge and absence of mistake. For any one of those instances, the State may well introduce evidence of those instances.

Declaring a mistrial is a drastic remedy and proper only where the error is beyond repair and cannot be corrected by any curative relief. *Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998). The trial court is in a better position to determine the effect of the remark on the jury. *Id.* An admonition is the proper remedy where the assertion of prejudice is highly speculative. *Banks v. State*, 315 Ark. 666, 869 S.W.2d 700 (1994).

Mr. Taylor argues that the State improperly inferred that because he "did it before, he did it again this time." We hold

that the admonishment cured any prejudice resulting from the prosecuting attorney's statement. In addition, as we have discussed, the testimony of the children and stepchildren was admissible; thus, the prosecuting attorney was entitled to refer to it during his opening statement. *See Rank v. State*, 318 Ark. 109, 883 S.W.2d 843 (1994) ("Where evidence is admissible, a party is entitled to refer to it during opening statement.").

Affirmed.